GREENBERG TRAURIG, LLP
JEFF E. SCOTT (SBN 126308)
Gregory A. Nylen (SBN 151129)
Thomas H. Godwin (SBN 255384)
2450 Colorado Avenue, Suite 400 East
Santa Monica, CA 90404
Telephone:  310-586-7700
Facsimile:  310-586-7800
Email:      scottj@gtlaw.com
            nyleng@gtlaw.com;
            godwint@gtlaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

LE KUN WU, as co-trustee of the
WU LIVING TRUST, DATED 10-
06-97 and MASTER EAGLE
FINANCE LIMITED,

        Plaintiffs,

vs.

SWABPLUS, INC., SWABPLUS
HOLDING, INC., SWABPLUS
WORLDWIDE LIMITED, GARRY
TSAUR, CHIEN HUA "JOHN"
TSAO, HONG "JENNIFER" WANG,
SHUNG I. "PETER" PAN,
FLORENCE TSAO and DOES 1 - 10

        Defendants.

CASE NO. CV08-07821 RGK (FFMx)

**COMPLAINT FOR:**

**(1)  Violations of Section 10(b) of the Exchange Act and Rule 10b-5;**
**(2)  Violations of Section 20 of the Exchange Act**
**(3)  Violations of Sections 5 and 12(a)(1) of the Securities Act;**
**(4)  Violations of Section 15 of the Securities Act**
**(5)  Violations of California Corporations Code Sections 25401 and 25500;**
**(6)  Violations of California Corporations Code Sections 25504;**
**(7)  Breach of Fiduciary Duty;**
**(8)  Common Law Fraud;**
**(9)  Negligent Misrepresentation;**
**(10) Constructive Fraud**

**[DEMAND FOR JURY TRIAL]**

COMPLAINT

LA 127,778,732v2

1   Plaintiffs Wei Jiung Wu and Le Kun Wu, as co-trustee of the Wu Living Trust,
2   dated 10-06-97 and Master Eagle Finance Limited (collectively, "Plaintiffs"), upon
3   personal knowledge as to themselves, their own acts and the acts they witnessed, and
4   upon information and belief as to all other matters, allege as follows:

5                        **Jurisdiction and Venue**

6        1.      This action arises under Sections 10(b) and 20 of the 1934 Exchange Act,
7   Sections 12 and 15 of the 1933 Securities Act, Sections 25401, 25500 and 25504 of the
8   California Corporations Cope and California common law.

9        2.      The Court has jurisdiction over Plaintiffs' federal claims pursuant to 28
10  U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to
11  28 U.S.C. § 1367.

12       3.      Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391(b).

13                        **Nature of the Action**

14       4.      This is an action for violations of state and federal securities laws and for
15  violations of state common law against Defendants Swabplus, Inc., Swabplus Holding,
16  Inc., Swabplus Worldwide Limited, Garry Tsaur, Chien Hua "John" Tsao, Hong
17  "Jennifer" Wang, Shung I. "Peter" Pan, Florence Tsao and DOES 1 - 10 (collectively,
18  "Defendants").

19       5.      As set forth in more detail below, Defendants made material
20  misrepresentations of fact and failed to disclose material facts necessary to make their
21  statements not misleading to induce Plaintiffs to invest in Swabplus. Following Plaintiffs
22  investment in Swabplus, moreover, Defendants improperly exercised their power as
23  controlling shareholders to enrich themselves and other selected shareholders at
24  Plaintiffs' expenses and in violations of Defendants' fiduciary duties to Plaintiffs.

25  ///
26  ///
27  ///
28  ///

**The Parties**

6.      Plaintiff Le Kun Wu, as co-trustee of the Wu Living Trust, dated 10-06-97 (the "Trust"), purchased Swabplus securities in or about May or June 2006 and the Trust, which does and has held a Swabplus stock certificate at all times relevant to the Complaint.  At Defendants' direction, the Trust wired the purchase price for its shares directly to Defendant Chien Hua Tsao's bank account.

7.      In or about May 2006, Mrs. Wu purchased Swabplus securities on behalf of Plaintiff Master Eagle Finance Limited ("Master Eagle"), which does and has held a Swabplus stock certificate at all times relevant to the Complaint.  At Defendants' direction, Master Eagle wired the purchase price for its shares directly to Defendant Chien Hua Tsao's bank account.

**The Entity Defendants**

8.      Defendant Swabplus, Inc. ("Swabplus") is incorporated under the laws of the State of California and is headquartered in Rancho Cucamonga, California.  Swabplus purports to be engaged in the development, manufacturing and marketing of liquid filled swab products for medical use and cosmetic purposes.

9.      Defendant Swabplus Holding, Inc. ("Holding") is incorporated under the laws of the State of California with its headquarters co-located with Swabplus in Rancho Cucamonga, California.

10.     Defendant Swabplus Worldwide Limited ("Worldwide") is incorporated under the laws of Samoa and, upon information and belief, is headquartered with Swabplus and Holding in Rancho Cucamonga, California.  Worldwide does business in California and is subject to both general and specific jurisdiction in California by virtue of (i) establishing continuous and systematic contacts with California and (ii) offering and selling securities in California.

11.     Defendants Swabplus, Holding and Worldwide shall be referred to collectively as the "Entity Defendants."

///

LA 127,778,732v2

### The Management Defendants

12.    Defendant Garry Tsaur ("Tsaur") is co-founder of Swabplus and (i) has served as the Chairman of the Board and Chief Executive Officer of Swabplus since 1998 (ii) as the President from 1998 to 2008 and (iii) as vice-president for an unknown period of time.  Tsaur is also on the board of Holding and Worldwide.  Tsaur is Defendant Tsao's brother.  Upon information and belief, Defendant Tsaur is a resident of California.

13.    Defendant Chien Hua "John" Tsao ("Tsao") is co-founder of Swabplus, and served as a director of Swabplus from 1999 to 2003 and as the Chief Financial Officer from 1998 to 2000 and from 2003 to 2004.  Tsao is also on the board of Worldwide. Tsao is Tsaur's brother.  Upon information and belief, Defendant Tsao is a resident of California.

14.    Defendant Hong "Jennifer" Wang ("Wang") has served as a director of Swabplus since 2004 and as the Chief Financial Officer of Swabplus since early 2008. Wang is also on the board of Holding and Worldwide. Upon information and belief, Defendant Wang lives with Defendant Tsaur and the two have been romantically involved for many years.  Upon information and belief, Defendant Wang is a resident of California.

15.    Defendant Shung I. "Peter" Pan ("Pan") has served as a director of Swabplus since 2000, and as the secretary of Swabplus from 1998 to 2000 and from 2003 to the present.  Pan is also on the board of Holding and Worldwide.  Upon information and belief, Defendant Pan is a resident of California.

16.    Defendant Florence Tsao  ("F. Tsao") served as Swabplus' Vice President of Marketing and Sales from 2000 to 2008.  In 2008, Tsao became Swabplus' President and continues to serve Swabplus in that capacity.  Defendant F. Tsao also serves as an officer for Holding and Worldwide.  Upon information and belief, Defendant F. Tsao is a resident of California.

///
///

LA 127,778,732v2

17.     Defendant Joe Nieh ("Nieh") has served as Swabplus' general counsel since at least 2004 and as Holding's and Worldwide's general counsel since their incorporation.  Upon information and belief, Defendant Nieh is a resident of California.

18.     Plaintiffs do not know the true names of Defendants DOES 1 through 10 and therefore sue them by those fictitious names.  Plaintiffs are informed and believe and on that basis alleges, that at all times mentioned in this complaint DOES 1 through 10 were the agents and employees of their co-Defendants and, in performing the acts and omissions alleged in this complaint, were acting within the course and scope of that agency and employment.

19.     Defendants Tsaur, Tsao, Wang, Pan, F. Tsao, Nieh and DOES 1 – 50 shall be referred to collectively as the "Management Defendants."

## Defendants' Material Misrepresentations And Omissions

20.     In or about late 2003, Swabplus initiated an offering of Swabplus common stock (the "2004 Securities Offering").

21.     In connection with the 2004 Securities Offering, Swabplus circulated a subscription agreement (the "Subscription Agreement").

22.     Each of the Defendants directly participated in the drafting of the Subscription Agreement and reviewed and approved the Subscription Agreement's contents before distributing it to the public.  Each of the Defendants directly participated in the formulation of the representations made to Plaintiffs.

23.     The Subscription Agreement stated in relevant part that Swabplus was "engaged in the development and sale of specialized swab delivery system[]" (the "Swab Technology").

24.     As of 2004, the Swab Technology was claimed in 11 patents (the "2004 Swab Patents").  Swabplus depends upon the 2004 Swab Patents to develop and sell its Swab Technology.  Because the 2004 Swab Patents protect the Swab Technology, Swabplus cannot lawful develop or sell the Swab Technology unless it owns or has a legal right to use the 2004 Swab Patents.

LA 127,778,732v2

25.     The 2004 Swab Patents also represent an asset of substantial value and Swabplus is worth substantially less without ownership or a right to use the 2004 Swab Patents.

**The Swabplus Patents And China Manufacturing Facility Misrepresentation**

26.     Prior to her purchase of Swabplus securities on behalf of Plaintiffs, Mrs. Wu, in or about early 2006, (i) traveled to Swabplus' facilities in Rancho Cucamonga, California, on at least two separate occasions and met with both Defendant Tsaur and Defendant Nieh and (ii) spoke to Defendant Tsaur on the phone concerning her purchases on at least one occasion (collectively, the "2006 Meetings"). During the 2006 Meetings, Mrs. Wu specifically discussed with Defendants Tsaur and Nieh whether Swabplus owned or had a right to use the 2004 Swab Patents. Even though they knew the statement was false when made, Defendants Tsaur and Nieh represented to Mrs. Wu at the 2006 Meetings that Swabplus owned the 2004 Swab Patents.

27.     Defendants' representation that Swabplus owned the 2004 Swab Patents was false and misleading. Contrary to Defendants representations, Defendant Tsaur owned all of the 2004 Swab Patents at the time he and Defendant Nieh met and spoke with Mrs. Wu at the 2006 Meetings. At the time Defendants Tsaur and Nieh met with Mrs. Wu and represented that Swabplus owned the 2004 Swab Patents, none of the Defendants had any intention of every transferring any of the 2004 Swab Patents to Swabplus and knew that they would never do so.

28.     The fact that Swabplus did not own the 2004 Swab Patents was nonpublic and Defendants Tsaur and Nieh had a duty (as officers or directors of the Companies) not to make false and misleading statements concerning whether Swabplus owned the 2004 Swab Patents. Defendant Tsaur and Nieh also had a duty to disclose information necessary to make their representations concerning the 2004 Swab Patents not misleading.

///

///

LA 127,778,732v2

29.     As of the time of the filing of this action, Swabplus still does not have any patents on file with the USPTO and the USPTO has no record of any patents being assigned to Swabplus.  Defendant Tsaur never transferred, assigned or licensed the 2004 Swab Patents to Swabplus.  Defendant Tsaur continues to own the 2004 Swab Patents.

30.     Because Defendant Tsaur owned the 2004 Swab Patents and Defendant Nieh knew that Defendant Tsaur owned the 2004 Swab Patents at the time they met with Mrs. Wu, Defendant Tsaur and Defendant Nieh knew that their representation to Mrs. Wu concerning the 2004 Swab Patents were false when made.

31.     In the 2006 Meetings, furthermore, Defendant Tsaur and Defendant Nieh represented to Mrs. Wu that Swabplus would use Plaintiffs' investment along with the funds raised in the 2004 Securities Offering to (among other things) construct a manufacturing facility in China (the "China Facility").  Defendant Tsaur and Defendant Nieh's representation was false.  As officers, directors or controlling shareholders of Swabplus, Defendant Tsaur and Defendant Nieh knew that Defendants had no intention of constructing and would not construct the China Facility at the time of their representation.  Swabplus never constructed any manufacturing facility anywhere and does not own or have a beneficial interest in a manufacturing facility.

32.     Defendants, furthermore, omitted to disclose (prior to Plaintiffs' purchase of Swabplus shares) that Swabplus is worth substantially less without ownership of the 2004 Swab Patents and the China Facility.

33.     Defendant Tsaur and Defendant Nieh's misrepresentations to Mrs. Wu concerning the 2004 Swab Patents and the China Facility were material.  Had Mrs. Wu known the truth, she would not have agreed to purchase Swabplus shares on Plaintiffs' behalf.

34.     In falsely representing that Swabplus owned the 2004 Swab Patents and that Swabplus would construct the China Facility, Defendants induced Mrs. Wu to purchase Swabplus shares at an artificially inflated price.  Mrs. Wu reasonably relied on Defendant

LA 127,778,732v2

Tsaur and Defendant Nieh's representation concerning the 2004 Swab Patents and the China Facility in purchasing Swabplus' shares on Plaintiffs' behalf.

35. Because of Defendant Tsaur and Defendant Nieh's knowing misrepresentation concerning the 2004 Swab Patents and the China Facility, Plaintiffs' Swabplus shares were and are worth substantially less than they would have been worth had Defendant Tsaur and Defendant Nieh's representations been true. The reduced value of Plaintiffs' Swabplus stock reflects Defendant Tsaur and Defendant Nieh's misrepresentations concerning the 2004 Swab Patents and the China Facility.

**Material Omissions About The Nature Of Plaintiffs' Investment**

36. As officers or directors of Swabplus, Defendants Tsaur and Nieh had a duty to disclose facts necessary to make their statements to Plaintiffs not misleading.

37. In offering to sell Swabplus stock to Plaintiffs during the 2006 Meetings, however, Defendants Tsaur and Nieh failed to disclose that (i) Defendants had purported to void all Swabplus common stock in 2004 and (ii) Defendant Tsaur purported to be Swabplus' sole shareholder. Defendants also failed to disclose to Plaintiffs that they intended to and did issue purportedly void Swabplus stock certificates to Plaintiffs.

38. In particular, in or about August 2004, Defendants circulated a one-page letter from Defendant Nieh, dated August 12, 2004, and solicited Swabplus shareholders to exchange their Swabplus shares for an unspecified number of shares of Holding (the "2004 Exchange Transaction"). Plaintiffs do not presently know when Defendants purported to complete the 2004 Exchange Transaction.

39. Even though Swabplus shareholders were not given an opportunity to vote on and most never agreed to the 2004 Exchange Transaction, Defendants improperly used their positions as majority and controlling shareholders to void purportedly all Swabplus common stock.

40. Defendants further purported to issue an unspecified number of Holding's stock to Swabplus shareholders in exchange for their Swabplus stock. Defendants never provided any notice to Swabplus shareholders about the fact that Defendants had

purported to (i) void their Swabplus stock certificates and (ii) issue to them an unspecified number of shares in Holding.  Defendants never provided Swabplus shareholders with stock certificates for their purported shares in Holding.

41.     As directors, officers or controlling shareholders of Swabplus and Holding, Defendants Tsaur and Nieh knew about but deliberately failed to disclose the existence of the 2004 Exchange Transaction during the 2006 Meetings.  Without making any disclosures to or seeking approval from Plaintiffs, Defendants also purported to deem Plaintiffs shareholders in Holding rather than Swabplus following Plaintiffs' purchases.

42.     In omitting to disclose to Plaintiffs during the 2006 meetings the number of shares of stock that Swabplus had issued and the number of shares that Defendants held, Defendants Tsaur and Nieh misled Plaintiffs concerning the percentage of ownership Plaintiffs would have in Swabplus as a result of Plaintiffs' stock purchases.  According to Defendants, Plaintiffs in fact have no ownership interest to show for their investment in Swabplus.  Had Plaintiffs' known the truth, they would not have purchased Swabplus stock.

43.     During the 2006 Meetings, Defendant Tsaur and Nieh knew about but failed to disclose that Defendants were causing Swabplus to pay Defendants for items such as research and development, consultant fees, automobile expenses, meals and entertainment and commissions even though Swabplus was receiving no benefit in return.  Had Plaintiffs known the truth, Defendants would not have invested in Swabplus.

44.     Defendants Tsaur and Nieh knew but failed to disclose that Defendants had been and were using their positions as directors, officers and controlling shareholders to prevent changes to Swabplus' Board of Directors and to conceal a coordinated set of acts and practices designed to defraud Plaintiffs' out of the value of their investments.

45.     Plaintiffs' Swabplus shares were and are worth substantially less than they would have been worth had Defendant Tsaur and Defendant Nieh's revealed the truth about Swabplus.  The reduced value of Plaintiffs' Swabplus stock reflects Defendant Tsaur and Defendant Nieh's material omissions.

LA 127,778,732v2

### Defendants Failure To Register Swabplus' Securities

46.     Defendants sold Swabplus securities to over 200 people.  Defendants sale of Swabplus securities was a public offering within the meaning of Section 5 of the 1933 Securities Act and Section 25503 of the California Corporations Code, and it did not qualify for any exemptions.  Defendants were required to but failed to file any registration statement or proper prospectus concerning their offers to sell and sales of Swabplus securities as required under applicable federal and state law.

### Defendants' Breaches Of Fiduciary Duty As
### Controlling Shareholders And Additional False And Misleading Statements

47.     Upon information and belief, Defendants are majority and controlling Swabplus shareholders and Defendants did not pay any consideration to Swabplus for their Swabplus stock.  As majority shareholders, Defendants owe a fiduciary duty to minority shareholders to use their ability to control Swabplus in a fair, just and equitable manner.  Defendants further owe a fiduciary duty to minority shareholders not to use their ability to control the corporation to benefit themselves alone or in a manner detrimental to the minority.  Defendants were required to make full and frank disclosure of all relevant information relating to affairs of the relationship.  Defendants further owed a duty not to engage in constructive fraud and not to place themselves in any position that would subject them to conflicting duties or expose them to the temptation of acting contrary to the best interests of the one to whom the duty is owed.

48.     Plaintiffs are minority shareholders, and Defendants owed Plaintiffs all of the duties of majority shareholders.

49.     Defendants breached their fiduciary duties to and directly injured Plaintiffs by engaging in acts and practices that permitted Defendants to enrich themselves and other Swabplus shareholders at Plaintiffs' expense.

50.     Since at least the time Plaintiffs purchased Swabplus stock, Defendants have improperly used their positions as majority and controlling shareholders to disenfranchise Plaintiffs by (i) failing to provide notice of annual shareholder meetings as required

LA 127,778,732v2

under Swabplus' by-laws and applicable state corporate law, (ii) failing to hold annual shareholder meetings, (iii) preventing Plaintiffs from exercising their cumulative voting rights for the election of directors as provided in Swabplus' by-laws, and (iv) failing to operate Swabplus with at least four directors. Indeed, Defendants improperly used their positions as majority and controlling shareholders purportedly to waive notice of shareholder meetings for all shareholders.

51.     Defendants improperly used their positions as majority and controlling shareholders to execute share redemptions that were discriminatory, undisclosed and unlawful. In so doing, Defendants wrongfully transferred some or all of the value of Plaintiffs' shares to other Swabplus shareholders, including themselves, their friends and their families. Defendants neither offered Plaintiffs an opportunity to redeem their shares nor disclosed the occurrence of such redemptions.

52.     Defendants improperly used their positions as majority and controlling shareholders to issue themselves millions of unauthorized Swabplus shares. Defendants never disclosed such issuances, and the purpose of such issuances was to ensure that Defendants retained total control over Swabplus.

**The 2004 Exchange Transaction**

53.     As set forth above, following Plaintiffs' purchase of Swabplus stock, Defendants purported to issue Plaintiffs an unspecified number of Holding's stock in exchange for their Swabplus stock. Defendants never provided any notice to Plaintiffs or Swabplus shareholders about the fact that Defendants had purported to (i) void their Swabplus stock certificates and (ii) issue to them an unspecified number of shares in Holding. Defendants never provided Plaintiffs with stock certificates for their purported shares in Holding.

54.     Defendants Tsaur and Nieh also failed to disclose that Defendants deliberately failed to provide Plaintiffs or other Swabplus shareholders with either (i) Holding shares of an equivalent value or (ii) a sufficient number of Holding shares to provide them with an equivalent level of voting power. At the same time, Defendants

LA 127,778,732v2

1  provided themselves and other selected Swabplus shareholders with (i) Holding shares
2  with a value equal to or in excess of their Swabplus holdings and (ii) a sufficient number
3  of Holding shares to provide such shareholders with an equivalent or greater level of
4  voting power.

5  **The 2008 Exchange Transaction**

6      55.    In 2008, Defendants purported to conduct a compulsory exchange of
7  Holding's stock for Worldwide's stock (the "2008 Exchange Transaction"). The 2008
8  Exchange Transaction resulted in a transfer of a controlling block of Holding stock.

9      56.    Prior to the 2008 Exchange Transaction, Defendants held a shareholder
10 meeting for Holding shareholders – which constitutes the first and only shareholder
11 meeting that Defendants ever noticed and held for Holding shareholders – the sole
12 purpose of which was to address the 2008 Exchange Transaction (the "2008 Shareholder
13 Meeting").

14     57.    Mrs. Wu attended the 2008 Shareholder Meeting. At the 2008 Shareholder
15 Meeting, Defendant Tsaur stated that Worldwide was profitable and would make
16 $35,000,000 in 2008. Defendant Tsaur's representation was false, and he knew that it
17 was false when he made the statement. In particular, Defendant Tsaur knew that
18 Worldwide was insolvent at the time he made the representation. Defendant Tsaur also
19 knew that he had entered into a sham transaction with Worldwide whereby (i)
20 Defendants caused Worldwide to pay millions of dollars to Defendant Tsaur for patents
21 that he owned but (ii) Defendant did not and would never transfer the patents that
22 Worldwide was purportedly purchasing (the "Sham Patent Transaction"). As a result of
23 the Sham Patent Transaction, Worldwide paid millions of dollars to Defendant Tsaur for
24 patents that Worldwide did not and would never own or have a legal right to use.

25     58.    Defendants improperly used their positions as majority and controlling
26 shareholders to void purportedly all Holding stock. Defendants further purported to issue
27 an unspecified number of Worldwide stock to Plaintiffs in exchange for their Holding
28 stock..

LA 127,778,732v2

59.     In connection with the 2008 Exchange Transaction, Defendants deliberately failed to provide Plaintiffs with either (i) Worldwide shares of an equivalent value or (ii) a sufficient number of Worldwide shares to provide Plaintiffs with an equivalent level of voting power.  At the same time, Defendants provided themselves and other selected Holding shareholders with (i) Worldwide shares with a value equal to or in excess of their Holding shares and (ii) a sufficient number of Worldwide shares to provide such shareholders with an equivalent or greater level of voting power.

60.     Defendants also caused Worldwide to issue Defendants millions of shares of Worldwide stock at or about the time of the 2008 Exchange Transaction.  Doing so enabled Defendants to obtain total control of Worldwide.

61.     Defendants did not disclose any of the material terms of the 2008 Exchange Transaction, including, but not limited to, the number of Worldwide shares that Holding shareholder would receive in exchange for their Holding shares, the value of Holding's shares or Defendants' own personal pecuniary interests in the transaction.

62.     Many of the investors involved in the purchase and sale of securities in the 2008 Exchange Transaction were unsophisticated and unaccredited.  Even though the 2008 Exchange Transaction was a public offering within the meaning of Section 5 of the 1933 Securities and Section 25503 of the California Corporations Code and did not qualify for any exemptions, Defendants failed to file any registration statement or proper prospectus concerning the 2008 Exchange Transaction as required by applicable federal and state law.

### Defendants' Abuse Of The Corporate Form

63.     There now exists, and at all times since the formation of the Entity Defendants, there has existed, a unity of interest and ownership among the Entity Defendants and the Management Defendants such that any individuality or separateness of these Defendants has ceased, and the Entity Defendants are the alter ego of the Management Defendants.

///

LA 127,778,732v2

64.     The Entity Defendants are and have been and at all times since their formation a mere shell, instrumentality and conduit through which the Management Defendants have carried on their business.

65.     The Management Defendants have exercised, and continue to exercise, full control and dominance over the Entity Defendants.

66.     The Entity Defendants were conceived and intended, and have been used, by the Management Defendants as a device to attempt to avoid personal liability.

67.     Adherence to the fiction of any separate existence between the Entity Defendants and the Management Defendants would permit abuse of the corporate privilege and would sanction fraud and promote injustice.

68.     In performing the acts and omissions alleged herein, and at all times relevant hereto, each of Defendants was the agent and employee of each of the other Defendants, and was at all times acting within the course and scope of such agency and employment, and with the knowledge and approval of each of the other Defendants.  Each of the Defendants directly participated in the formulation of the representations made to Plaintiffs.

## COUNT I

### (Against Defendants Swabplus, Tsaur and Nieh For Securities Fraud – Violations Of Section 10(b) And Rule 10(b)(5))

69.     Plaintiffs reallege the allegations contained in paragraphs 1 through 68 as though set forth fully herein.

70.     In connection with Mrs. Wu's purchase of securities on behalf of Plantiffs, Defendant Swabplus, Tsaur and Defendant Nieh disseminated, approved or deliberately disregarded the false statements set forth in the preceding paragraphs.  In so doing, Defendant Swabplus, Tsaur and Nieh used the means and instrumentalities of interstate commerce, including, without limitation, the mail, telephones, faxes, electronic mail and the internet.

///

LA 127,778,732v2

71.     Defendant Swabplus, Tsaur and Nieh violated Section 10(b) of the 1934 Exchange Act and Rule 10b-5 promulgated thereunder by, inter alia: (a) employing devices, schemes and artifices to defraud; (b) making each of the above-referenced untrue statements of material fact and/or failing to make each of the above-referenced disclosures of material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated as a fraud or deceit upon Plaintiffs, as set forth above.

72.     Defendant Swabplus, Tsaur and Nieh made each of the false representations and wrongful omissions with scienter in that, at the time Defendant, Swabplus Tsaur and Nieh made such statements, they knew each of them to be false, material and wrongful, and/or acted with reckless disregard for the truth of such statements.  Defendant Swabplus, Tsaur and Nieh at all times concealed and suppressed the falsity, materiality and wrongfulness of their statements from Mrs. Wu with the intent to defraud, deceive and injure Plaintiffs.

73.     At the times when Defendant Swabplus, Tsaur and Nieh made each of the false representations and wrongful omissions, Mrs. Wu was unaware of the falsity and wrongfulness of such statements and, believing such misrepresentations to be true, and in reliance on Defendant Swabplus, Tsaur and Nieh's misrepresentations, Mrs. Wu purchased the above-referenced securities from Defendants.

74.     Had Mrs. Wu known the true facts, Mrs. Wu would not have purchased such securities on Plaintiffs' behalf.

75.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have been damaged in amounts to be determined in accordance with proof at trial and all accrued interest.

///

///

///

LA 127,778,732v2

## COUNT II

### (Against The Management Defendants For Securities Fraud As Control Persons – Liability Under Section 20 Of The Exchange Act)

76.     Plaintiffs reallege the allegations contained in paragraphs 1 through 75 as though set forth fully herein.

77.     The Management Defendants acted as controlling persons within the meaning of Section 20(a) of the Exchange Act.  By reason of their positions as directors, officers and controlling shareholders, each of the Management Defendants had the power and authority to control (and did control in bad faith) each of the other Management Defendants in making each of the Management Defendants' false representations and wrongful omissions.  The Management Defendants are therefore liable pursuant to Section 20 of the Exchange Act.

## COUNT III

### (Against All Defendants For Violations Of Sections 5 And 12(a)(1) Of The Securities Act)

78.     Plaintiffs reallege the allegations contained in paragraphs 1 through 77 as though set forth fully herein.

79.     By engaging in the wrongful conduct set forth above concerning the 2008 Exchange Transaction, Defendants engaged in the sale or offer to sell securities to Plaintiff by use of the means and instrumentalities of interstate commerce including, but not limited to, mail, telephone, electronic mail and the internet.

80.     In violation of Sections 5 and 12(a)(l) of the Securities Act, no registration statement was ever filed for the securities purportedly sold to Plaintiffs in the 2008 Exchange Transaction, nor was any proper prospectus ever provided to Plaintiffs as required under Section 5.

81.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have been damaged in amounts to be determined in accordance with proof at trial and all accrued interest.

LA 127,778,732v2

## COUNT IV

### (Against The Management Defendants As Control Persons – Liability Under Section 15 Of The Securities Act)

82.     Plaintiffs reallege the allegations contained in paragraphs 1 through 81 as though set forth fully herein.

83.     The Management Defendants acted as controlling persons within the meaning of Section 15 of the Securities Act.  By reason of their positions as directors, officers and controlling shareholders, each of the Management Defendants had the power and authority to control (and did control in bad faith) each of the other Management Defendants.  The Management Defendants are therefore liable pursuant to Section 15 of the Securities Act.

## COUNT V

### (Against Defendants Swabplus, Tsaur And Nieh For Securities Fraud – Violations Of California Corporations Code Sections 25401 And 25500)

84.     Plaintiffs reallege the allegations contained in paragraphs 1 through 83 as though set forth fully herein.

85.     Defendant Swabplus, Tsaur and Nieh violated Sections 25401 and 25500 of the California Corporations Code by making and participating in, either by written or oral communications, each of the above-referenced false statements of material fact and/or each of the above-referenced failures to disclose material facts necessary in order to make the statements true or not misleading, related to Plaintiffs' purchases.  Defendant Swabplus, Tsaur and Nieh's misrepresentations and omissions in connection with their offer to sell Plaintiffs' Swabplus securities occurred in California and Plaintiffs' purchases occurred in California.

86.     When Defendant Swabplus, Tsaur and Nieh made and participated in each of the false representations and wrongful omissions related to Plaintiffs' purchases, Defendant Swanplus, Tsaur and Nieh knew, or should have known, that each of them was false, material and wrongful.

17

COMPLAINT

87.     When Defendant Swabplus, Tsaur and Nieh made each of the false representations and wrongful omissions concerning the Plaintiffs' purchases, Mrs. Wu was unaware of the falsity, materiality and wrongfulness thereof and, believing such misrepresentations to be true, and in reliance thereon, among other things, Mrs. Wu purchased securities from Defendants.  Had Mrs. Wu known the true facts, Mrs. Wu would not have invested in or purchased the securities that Defendants offered and sold.

88.     As a direct and proximate result of Defendant Swabplus, Tsaur and Nieh's wrongful conduct, Plaintiffs have been damaged in amounts to be determined in accordance with proof at trial and all accrued interest.

**COUNT VI**

**(Against The Management Defendants For Securities Fraud As Controlling Persons – Violations Of California Corporations Code Section 25504)**

89.     Plaintiffs reallege the allegations contained in paragraphs 1 through 88 as though set forth fully herein.

90.     The Management Defendants acted as controlling persons within the meaning of Section 25504.  By reason of their positions as directors, officers and controlling shareholders, each of the Management Defendants had the power and authority to control (and did control in bad faith) each of the other Management Defendants in making each of the Management Defendants' false representations and wrongful omissions.  Defendants, furthermore, materially aided each other in the foregoing wrongful acts and transactions constituting the violation.  Defendants are therefore liable pursuant to Section 25504.

///
///
///
///
///
///

18

COMPLAINT

LA 127,778,732v2

## COUNT VII

### (Against The Management Defendants For

### Breach Of Fiduciary Duty)

91.     Plaintiffs reallege the allegations contained in paragraphs 1 through 90 as though set forth fully herein.

92.     As majority and controlling shareholders, the Management Defendants owed Plaintiffs fiduciary duties, including without limitation, the duties to disclose to Plaintiffs, and not conceal, the truth regarding all material information necessary for Plaintiffs to make an informed decision about whether to invest in the securities Defendants offered, to protect Plaintiffs' investments and only use the investment monies lawfully and for the purposes disclosed, and to not act or fail to act in any manner that would harm or cause injury to Plaintiffs.

93.     By engaging in the tortious actions described above, the Management Defendants violated their fiduciary duties to Plaintiffs in a knowing and willful manner.

94.     As a direct and proximate result of the Management Defendants' wrongful conduct, Plaintiffs have been directly damaged in amounts to be determined in accordance with proof at trial and all accrued interest.

95.     In performing the wrongful acts and omissions alleged above, the Management Defendants acted in bad faith, in a knowing, willful, malicious, oppressive and fraudulent manner, and with the intent and purpose of advancing their own gain at the expense of Plaintiffs' rights, reputation and business interests. By reason thereof, Plaintiffs' are entitled to punitive and exemplary damages against the Management Defendants, and each of them, in a sum to be determined by the trier of fact herein.

///

///

///

///

///

LA 127,778,732v2

# COUNT VIII

## (Against All Defendants For Common Law Fraud)

96.     Plaintiffs reallege the allegations contained in paragraphs 1 through 95 as though set forth fully herein.

97.     Defendants made and/or ratified each of the false representations and wrongful omissions set forth above, and each such representation and omission was materially false and misleading.

98.     When Defendants made each of the false representations and wrongful omissions, Defendants knew or recklessly disregarded that each such representation and omission was materially false and wrongful and that Defendants had no intention of performing the representations made to Plaintiffs.  Defendants concealed and suppressed the falsity of their representations and wrongful omissions from Plaintiffs with the intent to deceive and injure Plaintiffs.

99.     Defendants false representations and wrongful omissions were material to Plaintiffs and Plaintiffs justifiably relied on Defendants' false representations in deciding to act or not to act.

100.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have been damaged in amounts to be determined in accordance with proof at trial and all accrued interest.

101.    In performing the wrongful acts and omissions alleged above, each of the Defendants acted in bad faith, in a knowing, willful, malicious, oppressive and fraudulent manner, and with the intent and purpose of advancing their own gain at the expense of Plaintiffs' rights, reputation and business interests. By reason thereof, Plaintiffs' are entitled to punitive and exemplary damages against Defendants, and each of them, in a sum to be determined by the trier of fact herein.

///

///

///

LA 127,778,732v2

## COUNT IX

### (Against All Defendants For Negligent Misrepresentation)

102.   Plaintiffs reallege the allegations contained in paragraphs 1 through 101 as though set forth fully herein.

103.   Defendants, by and through their agents, officers, directors, and employees, made the misrepresentations alleged herein.

104.   Defendants made these misrepresentations to induce Plaintiffs and did induce Plaintiffs into purchasing the subject investments and securities from Defendants.

105.   At the time the Defendants made these written and oral misrepresentations, Defendants had no reasonable ground to believe that such representations were true.

106.   Plaintiffs relied upon these written and oral statements in purchasing the investments and securities, without any knowledge of Defendants' misrepresentations and omissions.  Had Plaintiffs known the truth, Plaintiffs would never have purchased the investments and securities from Defendants.

107.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have been damaged in amounts to be determined in accordance with proof at trial and all accrued interest.

## COUNT X

### (Against All Defendants For Constructive Fraud)

108.   Plaintiffs reallege the allegations contained in paragraphs 1 through 107 as though set forth fully herein.

109.   In their respective roles as the issuers of the unqualified securities, directors, officers and controlling shareholders, Defendants individually and collectively owed to Plaintiffs fiduciary duties to make the fullest disclosure of all material facts that might affect Plaintiffs' decision with respect to their investments and their relationship with Defendants.

110.   Defendants misrepresented or failed to disclose the facts alleged herein, all of which were within their knowledge at all relevant times.  Defendants made false and

LA 127,778,732v2

misleading representations to Plaintiffs concerning the application of their investment funds as alleged herein and the fact that Defendants would benefit from Plaintiffs' investment at Plaintiffs' expense and in a manner undisclosed to Plaintiffs. Defendants took affirmative actions to prevent Plaintiffs from discovering their misrepresentations and omissions.

111. Defendants gained an advantage over Plaintiffs through the breach of their fiduciary duties.

112. Plaintiffs were unaware of the falsity and intentionally misleading nature of the aforementioned representations and omission and justifiably acted in reliance upon the aforesaid representations. Plaintiffs' reliance was justifiable based upon the fiduciary relationship that Defendants had assumed with Plaintiffs. Defendants, therefore, had a responsibility to fully disclose all information concerning Swabplus, Holding and Worldwide to Plaintiffs in a full and truthful manner.

113. At all times mentioned herein, Plaintiffs were unaware of the existence of the aforementioned material misrepresentations and omissions of material fact regarding Swabplus, Holding and Worldwide and Defendants' improper use of Plaintiffs' investment money.

114. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have been damaged in amounts to be determined in accordance with proof at trial and all accrued interest.

115. In performing the wrongful acts and omissions alleged above, each of Defendants acted in bad faith, in a knowing, willful, malicious, oppressive and fraudulent manner, and with the intent and purpose of advancing their own gain at the expense of Plaintiffs' rights, reputation and business interests. By reason thereof, Plaintiffs are entitled to punitive and exemplary damages against Defendants, and each of them, in a sum to be determined by the trier of fact herein.

///

///

COMPLAINT

LA 127,778,732v2

## Prayer for Relief

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

### On Count I:

a.   Compensatory damages in an amount to be proven at trial;

b.   Interest on the value of the original consideration at the legal rate from the date of purchase; and

c.   Such other and further relief as the Court may deem just and proper.

### On Count II:

a.   Compensatory damages in an amount to be proven at trial;

b.   Interest on the value of the original consideration at the legal rate from the date of purchase; and

c.   Such other and further relief as the Court may deem just and proper.

### On Count III:

a.   Compensatory damages in an amount to be proven at trial;

b.   Interest on the value of the original consideration at the legal rate from the date of purchase; and

c.   Such other and further relief as the Court may deem just and proper.

### On Count IV:

a.   Compensatory damages in an amount to be proven at trial;

b.   Interest on the value of the original consideration at the legal rate from the date of purchase; and

c.   Such other and further relief as the Court may deem just and proper.

### On Count V:

a.   Rescission of the purchase and recovery of investment capital as the original consideration paid for the securities at issue;

c.   Interest on the value of the original consideration at the legal rate from the date of purchase; and

COMPLAINT

LA 127,778,732v2

c.    Such other and further relief as the Court may deem just and proper.

## On Count VI:

a.    Compensatory damages in an amount to be proven at trial;

b.    Interest on the value of the original consideration at the legal rate from the date of purchase; and

c.    Such other and further relief as the Court may deem just and proper.

## On Count VII:

a.    Compensatory damages in an amount to be proven at trial;

b.    Interest at the legal rate from the date of purchase;

c.    Punitive damages; and

d.    Such other and further relief as the Court may deem just and proper.

## On Count VIII:

a.    Compensatory damages in an amount to be proven at trial;

b.    Interest on the value of the original consideration at the legal rate from the date of purchase;

c.    Punitive damages; and

d.    Such other and further relief as the Court may deem just and proper.

## On Count IX:

a.    Compensatory damages in an amount to be proven at trial;

b.    Interest at the legal rate from the date of purchase;

c.    Costs of suit herein incurred; and

d.    Such other and further relief as the Court may deem just and proper.

///
///
///
///
///
///

COMPLAINT

LA 127,778,732v2

### On Count X:

a.   Compensatory damages in an amount to be proven at trial;

b.   Interest at the legal rate from the date of purchase; and

c.   Such other and further relief as the Court may deem just and proper.

Dated:  November 25, 2008                    GREENBERG TRAURIG, LLP

By:_____
Gregory A. Nylen
Thomas H. Godwin
Attorneys for Plaintiffs

LA 127,778,732v2

## **DEMAND FOR JURY**

Plaintiffs demands a trial by jury on all issues so triable.

Dated:  November 25, 2008                    GREENBERG TRAURIG, LLP

By: _____
        Gregory A. Nylen
        Thomas H. Godwin

COMPLAINT

LA 127,778,732v2

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge R. Gary Klausner and the assigned discovery Magistrate Judge is Frederick F. Mumm.

The case number on all documents filed with the Court should read as follows:

## CV08- 7821 RGK (FFMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

======================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

JEFF E. SCOTT (SBN 126308)
GREGORY A. NYLEN (SBN 15⸱ ⸱9)
THOMAS H. GODWIN (SBN 255384)
GREENBERG TRAURIG, LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404
Telephone:  (310) 586-7700
Facsimile:  (310) 586-7800

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

LE KUN WU, as co-trustees of the WU LIVING
TRUST, DATED 10-06-97 and MASTER EAGLE
FINANCE LIMITED,

PLAINTIFF(S)

V.

SWABPLUS, INC., SWABPLUS HOLDING, INC.,
SWABPLUS WORLDWIDE LIMITED, GARRY
TSAUR, CHIEN HUA "JOHN" TSAO, HONG
"JENNIFER" WANG, SHUNG I. "PETER" PAN,
FLORENCE TSAO and DOES 1-10

DEFENDANT(S).

CASE NUMBER

CV08-07821  RGK  (FFMx)

**SUMMONS**

TO:DEFENDANT(S): SWABPLUS, INC., SWABPLUS HOLDING, INC., SWABPLUS WORLDWIDE LIMITED, GARRY
TSAUR, CHIEN HUA "JOHN" TSAO, HONG "JENNIFER" WANG, SUNG I. "PETER" PAN, FLORENCE TSAO

A lawsuit has been filed against you.

Within 20 days after service of this summons on you (not counting the day you received it), you
must serve on the plaintiff an answer to the attached ☒ complaint ☐ ___ ame___ nded complaint
☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer
or motion must be served on the plaintiff's attorney, Jeff E. Scott and Gregory A. Nylen, whose address is 2450
Colorado Avenue, Suite 400E, Santa Monica,  California 90404. If you fail to do so, judgment by default will
be entered against you for the relief demanded in the complaint. You also must file your answer or motion with
the court.

Clerk, U.S. District Court

**LA'REE HORN**

Dated:     NOV 26 2008

By: _____

Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed
60 days by Rule 12(a)(3)].*

CV-01A (12/07)



SUMMONS

American LegalNet, Inc.
www.USCourtForms.com

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐) <br> LE KUN WU, as co-trustee of the WU LIVING TRUST, DATED 10-06-97 and MASTER EAGLE FINANCE LIMITED | **DEFENDANTS** <br> SWABPLUS, INC., SWABPLUS HOLDING, INC., SWABPLUS WORLDWIDE LIMITED, GARRY TSAUR, CHIEN HUA "JOHN" TSAO, HONG "JENNIFER" WANG, SHUNG I. "PETER" PAN, FLORENCE TSAO and DOES 1-10 |
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) <br> Jeff E. Scott (SBN 126308)/Gregory A. Nylen (151129) <br> GREENBERG TRAURIG, LLP <br> 2450 Colorado Avenue, Suite 400E <br> Santa Monica, CA 90404 <br> Telephone: (310) 586-7700  Facsimile: (310) 586-7800 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No  ☒ **MONEY DEMANDED IN COMPLAINT: $** To Be Proven At Trial

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
15 U.S.C. § 78; 15 U.S.C. § 771; 15 U.S.C. 770

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☒ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 61 HIA(1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities – Employment | ☐ 640 R.R.& Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | ☐ 446 American with Disabilities – Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land ☐ 245 Tort Product Liability ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:**  Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                    CIVIL COVER SHEET                    Page 1 of 2



CV08-07821

American LegalNet, Inc.
www.FormsWorkflow.com

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☒ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Le Kun Wu - Los Angeles County<br>Master Eagle Finance Limited - Los Angeles County | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| See Attachment | |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date November 25, 2008
Gregory A. Nylen

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.FormsWorkflow.com

**LE KUN WU, as co-trustee of the WU LIVING TRUST v. SWABPLUS, INC., et al.**

**ATTACHMENT TO CIVIL COVER SHEET**

**IX.  VENUE**

**(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides**

Swabplus, Inc. - San Bernardino County
Swabplus Holding, Inc. - San Bernardino County
Swabplus Worldwide Limited - San Bernardino County
Garry Tsaur - San Bernardino County
Chien Hua "John Tsao - San Bernardino County
Hong "Jennifer" Wang - San Bernardino County
Shung I. "Peter" Pan - San Bernardino County
Florence Tsao - San Bernardino County